## Worman v. Treadwell Engineering Company.

*Workmen's compensation—Presumption of dependency—Act of June 26, 1919.*

Under section 307 of the Act of June 2, 1915, P. L. 736, as amended by paragraph v, section 2, of the Act of June 26, 1919, P. L. 642, 648, which provides that in the case of a minor killed by an industrial accident, who has been contributing to his parents, "the dependency of the parents shall be presumed," the presumption of dependency is not conclusive and cannot be made the basis of an award to the parents where it appears in evidence that the only money paid by the minor to them was his board, and there was no evidence to indicate that the amount so paid was more than his board was worth or that they had made any profit out of such payments.

Appeal from Workmen's Compensation Board. C. P. Northampton Co., Feb. T., 1927, No. 16.

*F. P. McCluskey*, for plaintiff; *Kirkpatrick & Maxwell*, for defendant.

STOTZ, J., Feb. 14, 1927.—This is an appeal from the Workmen's Compensation Board, which affirmed the referee's findings and award of compensation.

Chester Worman, Jr., the deceased employee of the defendant company, was the son of Chester and Minnie Worman. He was eighteen years of age when, in the course of his employment, he met with the accident which resulted in his death. He was unmarried, and lived at home with his parents. The testimony of the parents, given before the referee, shows that he paid $12 per week board, and on four separate occasions gave his mother $2 additional. His weekly wage was $24.50 when he worked full time. The referee found as a fact that "the claimants were partially dependent on the decedent for support at the time of his death," concluded as matter of law that they "are entitled to compensation for partial dependency under article III, section 307, paragraph 5, of our act," and awarded $4 per week for 300 weeks to them, plus burial expenses in the sum of $100.

The board, in the opinion filed dismissing the appeal from the referee, correctly stated that "the only question involved in this case is whether the claimants were dependent upon the decedent at the time of his death." No evidence of dependency was submitted, but the board held that "this case clearly falls within the statutory presumption" of dependency, in view of the language of section 307 of the act, which provides that: "If there be neither

widow, widower nor children entitled to compensation, then to the father or mother, if dependent to any extent upon the employee at the time of the accident, twenty per centum of wages: Provided, however, that in the case of a minor child who has been contributing to his parents, the dependency of said parents shall be presumed." The decision of the referee and the board rests wholly upon this presumption.

Did the deceased minor "contribute" to his parents out of his earnings, in the meaning of that term as used in the act, and were such contributions needed by them? In Corcoran v. Pennsylvania Coal Co., 76 Pa. Superior Ct. 325, Judge Henderson says, at page 327: "The question is whether the contributions of the son were needed to provide the claimants with some of the ordinary necessities of life suitable for persons in their class and position. The statute was designed to provide compensation; that is, the making good of the loss of support. Where such loss did not exist, compensation does not accrue." The uncontradicted evidence in the case shows that the son went to work when he was sixteen years of age, and that an agreement was then made between him and his parents that he should pay his board at the rate of $12 per week. At that time he earned $14.85 per week, and he kept the difference between his wages and the price of his board for himself. For the first year and a-half of his employment he paid his parents nothing additional to his board money, but, on the other hand, his father bought and paid for his clothes. At the end of a year and a-half he lost his job, and for eight or nine weeks he was out of employment. During this period he lived at home, but he paid no board. He then secured a job at the defendant's plant, where he worked about two months, when he was killed. When he resumed work, he again paid board at $12 per week, and continued to pay it regularly until the time of the accident.

Was this payment of board "contributing to his parents?" We cannot so view it. It was paid, not for their support or relief, but for his own support and benefit. There is nothing in the case which would tend to show that the amount he paid his parents for board was more than it was worth or more than he would have been obliged to pay elsewhere. When at the end of the week he paid them $12, he had received from them $12 worth of food, lodging and whatever else was involved in the term board. This was not contributing to the parents, any more than the parents were contributing to him.

But it might be argued that, because the son paid board and thus relieved the parents from supporting him, what he paid was in its result a contribution to them. This would not be tenable, but would be analogous to the situation shown in the case of Washco v. Wyoming Seminary, 88 Pa. Superior Ct. 470, where the language of the court below, quoted by Judge Cunningham with approval, was as follows: "The referee found that he came within the act because by working his way through school he relieved his father from the duty and expense of educating him, and allowed compensation accordingly. The board thought this interpretation of the act was too subtle and gave the act a less liberal but more practical interpretation, holding that the dependency of the parents should be of a positive and not a purely negative character. As well say that the parents were somewhat dependent upon a boy because he kept in good health and saved them doctor bills."

However, the testimony shows that during the two months the minor worked at defendant's plant he gave his father (or mother) $8 additional, in four payments of $2 each, and, therefore, it is contended that this must be taken as a "contribution," however small, and would alone support the conclusion of the board and the referee. To this we cannot agree. When these small extra payments were made the son was indebted for eight weeks' board. The

father himself so testified. This being so, the $8 was not a contribution, but part-payment of a debt of $96.

It must be kept in mind that the son at no time gave his parents any part of his surplus earnings over and above the price of his board, but kept it himself; and, as we have seen, he had not even paid his board in full when he was killed. How, then, can it be said that he contributed to his parents?

Moreover, there is no evidence of the parents' actual dependency upon the son. In Morris *v.* Yough Coal and Supply Co., 266 Pa. 216, Mr. Justice Kephart says, at page 220: "The term dependency in the statute contemplates actual dependency and must affirmatively appear in the record as a fact. No rigid rule can be laid down as to the amount or character of evidence necessary to show actual dependency; therefore, each case must be controlled by its own circumstances. But the term actual dependency does not mean sole and exclusive support. It includes as well partial support, and the query arises, were the contributions needed to provide the claimant (recognized as such by the statute) with some of the ordinary necessaries of life suitable for persons in her class and position?" There is not a syllable of testimony which would tend to show, following the language used in Corcoran *v.* Pennsylvania Coal Co., 76 Pa. Superior Ct. 325, that the moneys paid to the parents, even if they could be taken as contributions, "were needed to provide the claimants with some of the ordinary necessities of life suitable for persons in their class and position." Not even an inference to that effect can be drawn from the evidence. Citing again from the Corcoran case: "The statute was designed to provide compensation; that is, the making good of the loss of support. Where such loss did not exist, compensation does not accrue." There is no evidence of any "loss of support." The only loss, if there was any at all, was a possible loss of profits from the weekly board payments, and as to this there is no evidence.

As we have pointed out, the decision of the referee and the board rests entirely upon the presumption of dependency mentioned in the act. But the language of the act itself, as well as the cases we have cited, show that this presumption is not absolute and conclusive. It prevails only when certain facts and conditions are made to appear. In the instant case, they are either not shown or are negatived.

Having in mind the rules by which we must be governed in a case of this kind, as laid down by Mr. Justice Simpson in Stahl *v.* Watson Coal Co., 268 Pa. 452, we, therefore, consider it our duty to reverse the board.

Now, Feb. 14, 1927, the exceptions to the action of the Compensation Board in approving the findings, conclusions and award of the referee, and the appeal taken from the said board, are sustained, and the board is reversed.